Mitchell J. Canter, Esq.
100 Airport Executive Park
Suite 103
Nanuet, NY 10954
(845)371-7500
Attorney for Debtor/Defendant

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

_____

LEWIS WU and RACHEL WU

       Plaintiff(s),                   Civil Action no. 12-5000(FSH)

  -vs-                                     Civil Action

CAPITAL ONE, NA. and
CHEVY CHASE BANK,. F.S.B.

       Defendant(s).
_____

PLAINTIFFS 'MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT.

TABLE OF CONTENTS

I.   QUESTIONS PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

II.  BRIEF CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

III  FACTS:. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

IV.  DISCUSSION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

V.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-

# APPENDIX OF CASES AND AUTHORITIES

**CASE CITED**                                                                                                       **PAGE**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

*Celotex Corp. v. Catrett,,* 477 U.S. 317, 322 (1986).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

*Anderson v. Liberty Lobby, Inc.,* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U. S. 574, 587 (1986).. . . . . . . . . . . . . . . . . . -2-

*Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

*National Screen Serv. Corp. v. Poster Exchange, Inc.*, 305 F.2d 647, 651 (5th Cir. 1962). . . . . . . . . . . . . -2-

*K.M.C. Co., Inc. v. Irving Trust.* 757 F2d 752 (6th Cir 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

*Seidenberg v. Summit Bank* 348 N.J.Super. 243, 791 A.2d 1068 (N.J.Super.App.Div. 02/28/2002). . . . -3-

*Onderdonk v. Presbyterian Homes*, 85 N.J. 171 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

*Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

*Wells Fargo Bank, NA. v. The Ash Org.*, No. 09-CV-188-MO, 2010 WL 2681675. . . . . . . . . . . . . . . . . -4-

*De Luca v. De Luca*, 300 A.D.2d 342, 342, 751 N.Y.S.2d 766, 766 (2d Dept.2002). . . . . . . . . . . . . . . . -5-

*Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir.1993). . . -6-

*Red Rock Commodities, Ltd. v. Standard Chartered Bank.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-

*Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

*Gibbs v. Ernst*, 647 A.2d 882, 889, 538 Pa. 193, 207 (1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -8-

## STATUTES CITED

*Fed. R. Civ. Pro. Rule 56(c.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -1-

**I.     QUESTIONS PRESENTED**:

Must Defendant's Motion for Summary Judgment fail as a matter of law due to the presence of material disputed facts which must be resolved by the jury, including, but not limited to, whether Defendants breached the implied covenant of good faith in exercising "sole discretion," whether Defendants committed a fraud upon the Plaintiffs; and whether Defendants conduct was egregious enough to be exempted from the Fair Credit Reporting Act.

**II.    BRIEF CONCLUSION:**

There are enough questions of material fact that must be decided by the jury, that Defendants motion must fail as a matter of law.

**III    FACTS:**

Reference is made to the Response of Plaintiffs' Lewis Wu and Rachel Wu to Defendants' Statement of Undisputed Material Facts and Plaintiffs' Statement of Additional Undisputed Material Facts submitted simultaneously herewith for a statement of the facts of this case.

**IV.   DISCUSSION**

**SUMMARY JUDGMENT STANDARD.**

Fed. R. Civ. Pro. Rule 56(c) provides that a motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett,, 477 U.S. 317, 322 (1986). A factual dispute is material only if it might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Whether a

genuine issue of material fact is presented will be determined by asking if a reasonable jury could return a verdict for the non-moving party. Id  When evaluating a motion for summary judgment, the facts are to be construed in a light most favorable to the non-moving party. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U. S. 574, 587 (1986). The district court must not "resolve factual disputes by weighing conflicting evidence...since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is improper where the court merely believes it unlikely that the non-moving party will prevail at trial. National Screen Serv. Corp. v. Poster Exchange, Inc., 305 F.2d 647, 651 (5th Cir. 1962).  A reading of the facts set forth in the Defendants' Rule 56.1 Statement and Plaintiffs' Rule 56.1 Statement in a light most favorable to the Plaintiffs would require the Court to deny the instant motion.

**THE LOAN DOCUMENTS AND DEFENDANTS' IMPLIED COVENANT OF GOOD FAITH**

The Defendants would have the Court believe that inasmuch as the Bank had "sole discretion" to determine whether the conditions precedent to disbursements for the Construction Phase[1] would be met, the Bank could act with impunity and unreasonableness. Counsel for Defendants makes this position abundantly clear in Defendants' Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Defendants' Summary Judgment Memo") wherein counsel states "As an initial matter, nothing in the Loan Agreement granted Mr. Wu the right to enter the Construction Phase. In the Loan Agreement, Mr. Wu acknowledged that the Bank had "**sole discretion**"

---

[1] All terms used herein and otherwise undefined shall have the meanings ascribed in either Defendants' Rule 56.1 Statement and/or Plaintiffs' Rule 56.1 Statement.

(emphasis added) to determine whether he had met the Acceptance Conditions necessary to enter the Construction Phase." [Defendants' Summary Judgment Memo at pages 6-7).]

In K.M.C. Co., Inc. v. Irving Trust. 757 F2d 752 (6th Cir 1985) a retail and wholesale grocer in a similar position to the Plaintiffs herein claimed that his business was ruined by the defendant bank's refusal to make cash advances under a line of credit agreement. In returning a $7.5 million dollar plaintiff's verdict the court held that the lender's sole discretion to advance funds under a negotiated, explicit discretionary line of credit was limited by the obligation of good faith K.M.C. at ¶29.

Indeed the Courts of the State of New Jersey have held that the implied covenant of good faith and fair dealing has evolved to the point where it permits the adjustment of the obligations of contracting parties in a number of different ways. See Seidenberg v. Summit Bank,, 348 N.J.Super. 243, 791 A.2d 1068 (N.J.Super.App.Div. 02/28/2002). Some cases have focused on a plaintiff's inadequate bargaining power or financial vulnerability in order to avoid an inequitable result otherwise permitted by a contract's express terms. Sons of Thunder, Inc. v. Borden Inc., 148 N.J. 396, 420 (1997) Other decisions have revolved around the expectations of the parties, Onderdonk v. Presbyterian Homes, 85 N.J. 171 (1981) (Every contract contains an implied covenant of good faith and fair dealing).

In exercising discretionary authority as expressly authorized by an agreement, if a party does so "arbitrarily, unreasonably, or capriciously, with the objective of preventing the other party from receiving its reasonably expected fruits of the contract," the party taking the action may breach the covenant. Wilson v. Amerada Hess Corp., 168 N.J. 236, 244 (2001).

The good faith requirement has been recognized by other courts as well. In <u>Wells Fargo Bank, NA. v. The Ash Org.</u>, No. 09-CV-188-MO, 2010 WL 2681675, at *7 (D. Or. July 2, 2010).the Oregon district court, relying on the implied covenant of good faith and fair dealing, imposed an implied reasonableness requirement on the lender's exercise of "sole and absolute discretion." The lender contended that the phrase "sole and absolute discretion" in the agreement provided that lender "may unreasonably withhold consent to a second lien." The borrower argued that the "authority to exercise discretion is different from authority to act unreasonably." The court concluded that "a lender's authority to exercise 'sole and absolute discretion' does not include the authority to exercise that discretion unreasonably."

In a recent New York decision, <u>55 Eckford Realty LLC v. Bank of East Asia N.A.</u>, 2013 NY Slip Op 50541(U) the Kings County Commercial Division held that, despite a defendant's contractual right of "sole and absolute discretion," the implied covenant of good faith and fair dealing prevented defendant from imposing new requirements on the plaintiffs.

Defendants action in requiring an "as completed" appraisal of $10 million dollars or additional assets of almost $4 million dollars, neither of which requirement was in any of the Loan Documents was arbitrary and capricious, not in good faith, and certainly not within the expectations of the Plaintiffs who operated under the reasonable assumption that the Benchmark Appraisal and the Palisades Appraisal each satisfied the plain language condition that they be "equal to or exceeding the Loan Amount[2]."

---

[2] Amended CLA at ¶ 7(g)

In any event, in point of fact, the Bank actually was legally obligated to fund the Construction Phase as set forth in paragraph 2 of the Rider[3]. A copy of the Rider is annexed to Defendants' Rule 56.1 Statement as Exhibit L.

**LIEN ON NORWOOD PROPERTY.**

Upon the principal balance of the loan being paid to a level of $4,740,892.00 or below, the mortgage lien encumbering the Norwood Property was to be released by the Bank. See Deed of Trust Rider annexed to Defendants" Rule 56.1 Statement as Exhibit J.

The purchase price for the Alpine Property was $3,888,000.00. [Complaint ¶ 90]. The only funds extended to the Plaintiffs by the Bank was at the Closing in the amount of $2,495,418. Thus, the Bank was over-secured by the mortgage on the Alpine Property and did not have any valid legal basis to continue the lien on the Norwood Property. Yet despite numerous demand to release the lien they refused again, to exercise "good faith" and release the lien on the Norwood Property. This is especially true in light of the Bank's refusal to fund the Construction Phase thereby making it impossible for the Conversion of the Loan to the Permanent Phase as set forth in the Deed of Trust Rider.

**FOUR CORNERS RULE.**

Generally speaking a Court will not look beyond the "four corners" of a contract in determining its terms. Where a "contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence." <u>De Luca v. De Luca</u>, 300 A.D.2d 342, 342, 751 N.Y.S.2d 766, 766 (2d Dept.2002). In assessing ambiguity, we consider the entire contract to "safeguard against adopting an interpretation that would render any individual provision superfluous." <u>Sayers</u>

---

[3] ¶2 of the Rider provides in pertinent part "Future Advances....Provided that there has been no default as defined in the Loan Documents the [Bank} is legally obligated to make advances....."

-5-

v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1095 (2d Cir.1993). Contract terms are not ambiguous if they "have a definite and precise meaning and are not reasonably susceptible to differing interpretations." Id.; Red Rock Commodities, Ltd. v. Standard Chartered Bank, 140 F.3d 420, 424 (2d Cir.1998) ("A contract is not ambiguous where there is no reasonable basis for a difference of opinion.").

As set forth below, applying the "four corners" principal to the Loan Documents indicates again the presence of material facts requiring the denial of the instant application.

**Amended CLA**

The Amended CLA clearly states the "as-completed" appraisal must "equal or exceed the Loan Amount ($5,795,418.00). It is undisputed that the Benchmark Appraisal (Exhibit P to Defendants' Rule 56.1 Statement) and the Palisades Appraisal (Exhibit Q to Defendants' Rule 45.1 Statement) each more than satisfy this requirement, by appraising the Alpine Property at $7.45 million dollars and $7.8 million dollars, respectively.

In support of its contention that Plaintiffs knew of requirements other than as set forth in the Loan Documents, the Defendants rely upon the terms set forth in the Loan Builder Worksheet (Exhibit M to Defendants' rule 56.1 Statement)  The cited testimony does not evidence that Plaintiffs agreed to the terms of the Loan Worksheet nor does such testimony suggest when Mr. Wu viewed this document (either prior to or subsequent to the Closing) . If the Bank required a sixty (60%) percent loan to value ratio as claimed for the Project, and this information was relayed to and agreed to by the Plaintiffs prior to the Closing, query why it was note specifically set forth in the Amended CLA in Article 7(g)?

Nowhere within the Loan Documents is there a provision requiring additional funds of $4 million dollars as set forth in the e-mail of Yvette Lassiter dated September 27, 2007, annexed to Plaintiffs' 56.1 Statement as Exhibit 9..

-6-

It was only upon receiving the e-mail from Ms. Lassiter dated September 21, 2007, that the Plaintiffs first learned that the Bank was now looking for an "as completed" appraisal of the Alpine Property equal to almost double the Loan Amount. See e-mail from Yvette Lassiter annexed to Plaintiffs' Rule 56.1 Statement as Exhibit 8,

**Second Extension Agreement**

The Second Extension Agreement (Annexed to Defendants' Rule 56.1 Statement as Exhibit C2) clearly and unambiguously states as follows:

> "8. The provisions of this Modification and Extension Agreement shall become effective as of the date accepted and **executed by Borrower (s) before a notary ...**(emphasis added) "

This document was never signed by Plaintiff Rachel Wu, nor more importantly, was it executed in accordance with its specific terms making it invalid and unenforceable. Defendants are very much aware of this deficiency but have not addressed the issue. As Defendants rely upon this clearly unenforceable document in seeking to dismiss the Plaintiffs Complaint, their application must be denied as a matter of law.

**Rachel Wu as Borrower**

Plaintiffs' allegation that Rachel Wu became a "Borrower" under the Loan Documents when she signed the Rider, the Amended CLA [A copy of the Amended CLA bearing Plaintiff, Rachel Wu's signature, is annexed to Plaintiffs' Rule 56.1 Statement as Exhibit 3] and the Second Note Addendum has never been addressed. If as Plaintiffs contend she did so, then Defendants have failed to provide any notice or demands upon her as a Borrower in violation of the terms of the Loan Documents. The status of Plaintiff, Rachel Wu, as a party to the Loan Documents is an essential determination that must be made by the trier of fact.

Lastly, Defendants raise for the first time in the within Motion that Plaintiff Lewis Wu, allegedly breached the Loan Documents by over-stating his income on the Loan Application. In support of its argument Defendants quote testimony taken at the deposition of Mr. Wu, held on July 2, 2013, a full five years after the alleged breach occurred. The evidence used in support of this newly made allegation is Mr. Wu's testimony about income he **reported** on his Federal income tax returns. Whether Plaintiff, Lewis Wu had other income was never raised. Notwithstanding the foregoing, no letter or notice of default was ever provided to Plaintiffs or either of them for the reasons now set forth by counsel.

The nature and extent of Mr. Wu's income would necessarily have to be made by the trier of fact if as alleged by counsel this was a material basis for denying the funding of the Construction Phase and would necessitate denial of the motion.

**FRAUD**

In order to prove fraud the Plaintiffs must establish the following: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp., 315 F.Supp.2d 666, 686 (E.D. Pa. 2004; Gibbs v. Ernst, 647 A.2d 882, 889, 538 Pa. 193, 207 (1994)..

The Complaint alleges the Bank made material misrepresentations to Plaintiffs with respect to the appraisal requirements and the amount of assets that Plaintiffs must show in their bank accounts. The Complaint further alleges that Plaintiff, Lewis Wu, detrimentally relied upon these misrepresentations in entering into the Loan Documents and any extensions thereto. No evidence to the contrary has been introduced by the Defendants

-8-

sufficient to defeat these allegations. The determination of this claim also is properly left to the trier of fact.

### WILFUL AND MALICIOUS CONDUCT OF DEFENDANTS

Plaintiffs claim that the acts of Defendants in reporting that Plaintiffs were delinquent in fulfilling their obligations under the Loan Documents despite the Bank having first beached the Loan Documents excusing any further compliance by the Plaintiffs was indeed done "falsely and maliciously[4]" and thus exempt from the provisions of the Fair Credit Reporting Act.

At the very least, the trier of fact is the proper party to determine whether the allegations are true, giving the Court further reason to deny the application for summary judgment.

### V.  CONCLUSION

For the reasons set forth herein, defendants' motion for summary judgment should be denied.

Dated:  February 18, 2014

                                          Respectfully submitted.

                                          /s/ Mitchell J. Canter

                                          Mitchell J. Canter

### CERTIFICATE OF SERVICE

---

[4] Complaint ¶¶111 - 115

I, Mitchell J. Canter hereby certify that a true and correct copy of Plaintiffs Memorandum of Law in Opposition to Defendants Motion for Summary Judgment  was served via the United States District Court for the District of New Jersey's CM/ECF system on this date, upon the following:

>S. Cxlifford Sacalis, Esq.
>Attorney for Defendants
>Ballard Spahr LLP
>1735 Market Street, 51st floor
>Philadelphia, PA 19103-7599

Dated:   Nanuet, New York
         February 18, 2014

>/s/Mitchell J. Canter
>Mitchell J. Canter
>Attorney for Debtor
>100 Airport Executive Park
>Suite 103
>Nanuet, NY 10954
>845.371.7500