## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

LEWIS WU and RACHEL WU,       :
       :
              Plaintiffs,       :
       :
              v.       :   Civil Action No. 2:12-CV-05000-FSH-MAH
       :
CAPITAL ONE, N.A. and       :   **MOTION DAY MARCH 3, 2014**
CHEVY CHASE BANK, F.S.B.,       :
       :
              Defendants.       :
       :
       :

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

Martin C. Bryce, Jr. Esq. (NJ 021241990)
William J. DeSantis, Esq. (NJ 035021985)
Clifford Sacalis, Esq. (NJ 000772013)
BALLARD SPAHR LLP
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1163
Telephone: 856.761.3400
Facsimile: 856.761.1020

*Attorneys for Defendants*

Capital One, N.A. and Chevy Chase Bank,
F.S.B.

DMEAST #17810262 v6

## <u>TABLE OF CONTENTS</u>

**Page**

I.      **INTRODUCTION**................................................................................................ 1

II.    **ARGUMENT** ..................................................................................................... 3

      A.     **Summary Judgment Should Be Granted On All Of Plaintiffs' Claims As Plaintiffs Fail To Refute Defendants' Showing That All Of Plaintiffs' Claims And Damages Are Premised On Credit Reporting And Are Preempted By The FCRA** .................................................. 3

      B.     **Plaintiffs Fail To Refute Defendants' Showing That Plaintiffs' Credit Reporting Damages Cannot Support Plaintiffs' Breach Of Contract Or Fraud Claims.** ................................................................................ 5

      C.     **Plaintiffs Fail To Refute Defendants' Showing That Plaintiffs' Fraud Claim Is Barred By The Economic Loss Doctrine.** ............................. 6

      D.     **Plaintiffs Fail To Show There Is A Disputed Material Fact With Respect To Defendants' Right To Maintain The Lien On The Norwood Property.** .................................................................................... 6

      E.     **Plaintiffs Fail To Show There Is A Disputed Material Fact With Respect To Their Claim That The Loan Should Have Entered The Construction Phase.** ...................................................................... 7

      F.     **Plaintiffs Fail To Show That Mr. Wu Did Not Waive The Right To Enter The Construction Phase.** .......................................................... 11

III.   **CONCLUSION** .......................................................................................... 133

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Brandt v. Hogan*,
    2013 WL 1702181 (D.N.J. Apr. 18, 2013) ...............................................................5

*Burrell v. DFS Services, LLC*,
    753 F. Supp. 2d 438 (D.N.J. 2010) .........................................................................4

*Cargill Global Trading v. Applied Develop. Co.*,
    706 F. Supp. 2d 563 (D.N.J. 2010) .........................................................................9

*Davis v. EQT Prod. Co.*,
    2012 WL 6111880 (N.D. W. Va. Dec. 10, 2012) ..................................................12

*Fallas v. Cavalry SPV I, LLC*,
    2013 WL 1811909 (D.N.J. Apr. 29, 2013) ...............................................................3

*Fields v. Thompson Printing Co.*,
    363 F.3d 259 (3d Cir. 2004).....................................................................................9

*Guarantee Co. of N. Am. USA v. Wainwright*,
    2011 WL 1807454 (M.D. Ala. May 11, 2011) ......................................................11

*Hutchinson v. De. Sav. Bank FSB*,
    410 F. Supp. 2d 374 (D.N.J. 2006) .........................................................................3

*In re Bright*,
    2013 WL 3270346 (Bankr. E.D. Mich. June 26, 2013)........................................11

*O'Diah v. New York City*,
    2003 WL 22021921 (S.D.N.Y. Aug. 28, 2003) .......................................................4

*Ogbon v. Beneficial Credit Servs., Inc.*,
    2013 WL 1430467 (S.D.N.Y. Apr. 8, 2013)............................................................5

*Ross v. F.D.I.C.*,
    625 F.3d 808 (4th Cir. 2010) ...................................................................................4

*Shannon v. Equifax Inform. Servs., LLC*,
    764 F. Supp. 2d 714 (E.D. Pa. 2011) ......................................................................5

**STATE CASES**

*Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assoc.*,
    864 A.2d 387 (N.J. 2005).........................................................................................9

*Hammer v. Hair Systems, Inc.*,
    2009 WL 1686820 (N.J. Super. Ct. App. Div. Sept. 24, 2010) ..................................................9

*Pear Street, LLC v. 818 Pear Street, LLC*,
    2011 WL 9102 (N.J. Super. Ct. App. Div. Jan. 4, 2011) ........................................................12

**FEDERAL STATUTES**

15 U.S.C. §1681h(e) ....................................................................................................1, 3, 4, 5

**RULES**

N.J.R.E. 902(h) .........................................................................................................................11

## I.    INTRODUCTION

Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Opposition") fails to address, much less dispute, many of Defendants' key factual and legal arguments and fails to identify any evidence sufficient to overcome Defendants' Motion for Summary Judgment ("Motion").  First, Plaintiffs have not made any attempt to dispute that all of their claims and damages are premised on alleged credit reporting by the Bank.[1]  This is significant because they implicitly concede that the FCRA preempts their claims and they seek to avoid that result only by invoking Section 1681h(e)'s exception to preemption.  This effort fails because Section 1681h(e)'s exception is inapplicable to the Bank and to Plaintiffs' claims.  Defendants demonstrated in their Motion that the "plain language" approach utilized by New Jersey District Courts in interpreting the FCRA preempts all of Plaintiffs' claims.  The Section 1681h(e) exception upon which Plaintiffs rely only applies when a furnisher "uses" a credit report containing false information with "malice" or "willful intent to injure."  Here, Plaintiffs do not contend – nor could they – that the Bank was using Mr. Wu's credit report in any manner.  In any event, they failed to produce any evidence to show, as they must, that the Bank's credit reporting of the foreclosure was false or done with malice or willful intent to injure Mr. Wu.  Thus, all of Plaintiffs' claims are preempted and for this reason alone summary judgment should be entered in favor of the Bank.

In any event, Plaintiffs do not dispute that they failed to submit a Construction Contract meeting the terms of the Loan Agreement or that Mr. Wu did not sign the Second Extension Agreement under duress.  Thus, their breach of contract claim fails as a matter of law.  Further,

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings attributed to them in Defendants' Statement of Undisputed Material Facts submitted with their Motion for Summary Judgment, No. 96-1.

the Opposition does not dispute that Plaintiffs lack evidence demonstrating any recoverable damages with respect to their breach of contract and fraud claims, and that Plaintiffs' fraud claim is barred by the economic loss doctrine.

Plaintiffs' contention that the Bank should have released the lien on the Norwood Property because the Bank was "over-secured" fails because it blatantly ignores one of the Deed of Trust Rider's two prerequisites to release of the lien as well as the clear terms of the Cross-Collateralization Rider.  The Deed of Trust Rider only obligated the Bank to release the lien on the Norwood Property upon conversion of the Loan to the Permanent Phase which required a completed Project on the Alpine Property.  It is undisputed the Project was not completed. Further, the Cross-Collateralization Rider makes clear that both the Alpine and Norwood Properties were to be treated as a "single property" subject to lien.

Finally, Plaintiffs' contention that the Second Extension Agreement is unenforceable fails.  The fact that the Second Extension Agreement was not notarized is immaterial as notarization is only a method of protecting a party to a contract from another party's claim that their signature on the contract is not valid.  Here, Mr. Wu does not claim that his signature is invalid and his wavier of the Construction Phase in the Second Extension Agreement is enforceable.  Further, it is irrelevant whether Mrs. Wu was or was not a Borrower under the Loan Agreement as Plaintiffs have not demonstrated any damages specific to Mrs. Wu that would permit her to maintain a separate breach of contract claim.

Accordingly, for the reasons discussed more fully herein and in Defendants' Motion, Defendants' respectfully request that this Court grant their Motion for Summary Judgment in its entirety and dismiss Plaintiffs' claims with prejudice.

## II.    ARGUMENT

### A.    Summary Judgment Should Be Granted On All Of Plaintiffs' Claims As Plaintiffs Fail To Refute Defendants' Showing That All Of Plaintiffs' Claims And Damages Are Premised On Credit Reporting And Are Preempted By The FCRA.

Defendants demonstrated in their Motion that all of Plaintiffs' claims and damages are premised on alleged credit reporting by the Bank.  (Brief, No. 96-2, at pp. 15-19.)  Plaintiffs do not dispute that fact and this failure is fatal to Plaintiffs' claims.  While Plaintiffs argue "that the acts of Defendants in reporting that Plaintiffs were delinquent … was indeed done 'falsely and maliciously' and thus exempt from the provisions of the Fair Credit Reporting Act," (Opposition, at pp. 9), their argument fails as a matter of law.

First, Plaintiffs' claims are preempted under the FCRA based on a plain reading of the FCRA's two preemption provisions.  (Brief, No. 96-2, at pp. 15-19.)  New Jersey District Courts follow the "plain language" approach to reconciling the two preemption provisions, finding that the FCRA bars all "state law claims arising out of actions taken in connection with consumer credit reporting." *See, e.g.*, *Hutchinson v. De. Sav. Bank FSB*, 410 F. Supp. 2d 374, 384 (D.N.J. 2006) (dismissing claims because alleged damages arose from "negative credit ratings and inability to obtain other financing [which] are damages flowing from [defendants'] delinquency reports to credit bureaus [and] [s]uch conduct is regulated by FCRA and is therefore preempted by FCRA.") (citation omitted).  Plaintiffs' credit slander claim is expressly premised upon the Bank's credit reporting and all of Plaintiffs' remaining claims seek damages suffered solely as a result of the Bank's credit reporting.  (Brief, No. 96-2, at pp. 15-19.)  Plaintiffs have failed to refute this showing and, therefore, their claims are all preempted.  *See, e.g.*, *Fallas v. Cavalry SPV I, LLC*, No. 3:12-05664(PGS), 2013 WL 1811909, at *9 (D.N.J. Apr. 29, 2013) ("[A]ny

state law claims predicated upon the false reporting of negative credit activity are dismissed as preempted by the FCRA.").

Second, Plaintiffs' reliance on FCRA Section 1681h(e)'s willful and malicious exception is misplaced because, as Defendants have shown, this provision does not apply.  (Brief, No. 96-2, at pp. 18-19.)  FCRA Section 1681h(e) preempts all state law claims against furnishers of credit information, such as the Bank, unless the claims are based on <u>the furnisher's use</u> of the consumer reports (and not the furnishing of information) with malice or willful intent to injure. 15 U.S.C. § 1681h(e); *see Burrell v. DFS Services, LLC*, 753 F. Supp. 2d 438, 450 (D.N.J. 2010) (holding that, as to claims "not based on Defendants' use of a 'consumer report,' [ ] the preemption provision contained in 15 U.S.C. § 1681h(e) does not apply.") (citing *Ross v. F.D.I.C.*, 625 F.3d 808, 814-15 (4th Cir. 2010)).  Thus, because Plaintiffs' claims do <u>not</u> involve the Bank's use of their credit reports, Plaintiffs' unsupported allegations that the Bank falsely and maliciously "reported" Plaintiffs as delinquent do not permit Plaintiffs to escape FCRA preemption.  (Brief, No. 96-2, at pp. 18-19); (Opposition, at pp. 9.)

Finally, even if Section 1681h(e) could apply, Plaintiffs have offered <u>no</u> evidence that the Bank's credit reporting was inaccurate or that Defendants acted maliciously or with willful intent to injure.  For Section 1681h(e) to apply, Plaintiffs are required to show that Defendants reported false information, but Plaintiffs have not disputed and cannot dispute the accuracy of Defendants' reporting of foreclosure.  *See, e.g.*, (Binder Dep., Ex. F2, at 34:22-35:25 (acknowledging that Mr. Wu stopped making payments toward the Loan and that credit reporting of foreclosure would not have occurred otherwise)); *O'Diah v. New York City*, 2003 WL 22021921, at *3 (S.D.N.Y. Aug. 28, 2003) (failure to adduce evidence that credit reporting was false or inaccurate is fatal to plaintiff's claimed 1681h(e) exception).

Further, even if Plaintiffs could show Defendants' reporting was false, Plaintiffs have presented no evidence of malice or willful intent to injure. *See, e.g.*, *Shannon v. Equifax Inform. Servs., LLC*, 764 F. Supp. 2d 714, 728 (E.D. Pa. 2011) (holding state law claim preempted by Section 1681h(e) when plaintiff could not show evidence of malice or willful intent to injure); *Ogbon v. Beneficial Credit Servs., Inc.*, 2013 WL 1430467, at *11 (S.D.N.Y. Apr. 8, 2013) (same). Plaintiffs' mere contention that Defendants acted willfully or with malice cannot suffice to carry their burden in opposing summary judgment. *See, e.g.*, *Brandt v. Hogan*, No. 10-4944, 2013 WL 1702181, at *3 (D.N.J. Apr. 18, 2013) ("Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment.").

**B.     Plaintiffs Fail To Refute Defendants' Showing That Plaintiffs' Credit Reporting Damages Cannot Support Plaintiffs' Breach Of Contract Or Fraud Claims.**

Defendants demonstrated in their Motion that Plaintiffs' breach of contract and fraud claims, premised entirely on damages allegedly stemming from the Bank's credit reporting, could not be sustained because Plaintiffs failed to show that those alleged damages were either the "natural and probable consequence" of Defendants' alleged breach or that those damages "proximately resulted" from Defendants' alleged wrongful conduct. (Brief, No. 96-2, at pp. 19-20.) In their Opposition, Plaintiffs fail to address Defendants' argument and have made no attempt to show how their alleged credit reporting damages were the natural and probable consequence of Defendants' alleged breach of contract or how those credit reporting damages proximately resulted from Defendants' alleged fraud. Accordingly, Plaintiffs' breach of contract and fraud claims fail.

C.     **Plaintiffs Fail To Refute Defendants' Showing That Plaintiffs' Fraud Claim Is Barred By The Economic Loss Doctrine.**

Defendants demonstrated in their Motion that the economic loss doctrine barred Plaintiffs' fraud claim because the claim is premised solely on economic damages flowing from the Bank's alleged failure to perform as promised under the Loan Agreement.  (Brief, No. 96-2, at pp. 23-24.)  Thus, the fraud claim is intrinsic to the Loan Agreement and the economic loss doctrine applies.  (*Id.*)  Indeed, Plaintiffs' Opposition concedes that the alleged fraud was intrinsic to the Loan Agreement by stating that the alleged fraud consisted of "material misrepresentations to Plaintiffs with respect to the appraisal requirements [of the Loan Agreement] and the amount of assets that Plaintiffs must show" in order to proceed to the Construction Phase of the Loan.  (Opposition, at pp. 8.)  Accordingly, the economic loss doctrine bars Plaintiffs' fraud claim.

D.     **Plaintiffs Fail To Show There Is A Disputed Material Fact With Respect To Defendants' Right To Maintain The Lien On The Norwood Property.**

Plaintiffs' Opposition purports to invoke the "four corners rule" of contract interpretation, while ignoring one of the Deed of Trust Rider's two essential conditions to Defendants' obligation to release the lien on the Norwood Property as well as the clear terms of the Cross-Collateralization Rider.  (Opposition, at pp. 5-6.)  Plaintiffs' primary focus is on their erroneous belief that, because Defendants never extended an amount exceeding $4,740,892.00, there was no valid basis for the Bank to maintain a lien on the Norwood Property.  Plaintiffs' argument cannot withstand scrutiny.

First, Plaintiffs blatantly ignore the fact that one of the conditions to the release of the lien on the Norwood Property was conversion of the Loan to the Permanent Phase and that conversion of the Loan to the Permanent Phase required "completed construction of the Project according to the terms and conditions of this Agreement[.]"  (CLA, Ex. D, at §§ 1.19, 4.2.)  It is

undisputed that the Project was not completed.  Thus, Defendants were not obligated to release the lien.

Plaintiffs' argument also fails under the terms of the Cross-Collateralization Rider which Plaintiffs ignore in their Opposition.  Upon signing the Mortgage, Plaintiffs "acknowledge[d] that the Lender is unwilling to extend the Loan to the Borrower unless the Borrower agrees that the Borrower's Properties *will be treated as a single property* through the imposition of cross-collateralization and cross-default provisions."  (Cross-Collateralization Rider, Ex. K, § (b) (emphasis added).)  Indeed the Mortgage placed "a single blanket lien" on all of Plaintiffs' Properties and Plaintiffs agreed that "should a breach or default occur … Lender shall have the right in its sole and absolute discretion, to exercise and perfect any and all rights under the Loan Documents and Security Instruments(s) … including, but not limited to, an acceleration of the Note *and the sale of one or all of the Borrower's Properties*[.]"  (*Id.* at §§ (a), (d) (emphasis added).)  Thus, Plaintiffs were aware and agreed that both Properties secured the Loan and that the Bank would maintain its lien on both Properties.[2]

### E.    Plaintiffs Fail To Show There Is A Disputed Material Fact With Respect To Their Claim That The Loan Should Have Entered The Construction Phase.

Plaintiffs' Opposition recognizes that the Bank had sole discretion to determine whether the Loan would enter the Construction Phase.  (Opposition, at pp. 2.)  However, Plaintiffs' argue, for the first time in this case, that the Bank's discretion was constrained by the implied covenant of good faith and fair dealing.  Plaintiffs claim that the Bank breached the implied covenant in

---

[2]     Although not discussed in this Reply Brief due to page limitations, Plaintiffs' Opposition also fails to identify any evidence contesting Defendants' argument that Plaintiffs lack evidence to maintain their reformation of mortgage claim.  Thus, Defendants should be granted summary judgment on that claim.

deciding that the Acceptance Condition requiring an "as-completed" appraisal had not been met. (Opposition, at pp. 4.)  This argument fails for several independent reasons.

First, Plaintiffs were required to satisfy <u>all</u> of the Acceptance Conditions and failed to meet at least one additional condition which their Opposition fails to address.  Defendants demonstrated that the Construction Management Agreement was insufficient to meet the requirements of the Section 7(b)(i) Acceptance Condition because it did not state a final cost for the Project or for the various segments of the Project and provided a timeframe for completion of the Project outside of the period permitted by the Loan Agreement.  (Brief, No. 96-2, at pp. 7-8.) Nowhere in their Opposition do Plaintiffs refute this failure or attempt to show that they submitted a Construction Contract meeting the terms of the Loan Agreement.[3]  Accordingly, because Mr. Wu failed to meet this essential Acceptance Condition, the Bank rightfully chose not to permit the Loan to enter the Construction Phase.

Second, Plaintiffs' implied covenant of good faith argument concerning the "as completed" appraisal Acceptance Condition lacks legal merit as it attempts to use the implied covenant to rewrite the Loan Agreement and deprive the Bank of its express rights.  The implied covenant "is to be interpreted narrowly, lest it 'become an all-embracing statement of the parties'

---

[3]     Although Plaintiffs do not devote a single sentence of argument in their Opposition to Defendants' contention that Plaintiffs failed to submit an acceptable Construction Contract, they do state in their Counterstatement of Material Facts that the Bank waived any objections to that Acceptance Condition "[b]y accepting the Construction Contract." *See, e.g.*, (Counterstatement, No. 103-1, at ¶ 63.)  However, Plaintiffs have not presented any evidence or argument as to how the Bank waived its right to contest the acceptability of the required Construction Contract.  In any event, such argument would be futile. Plaintiffs' exhibits to their Counterstatement clearly show that the Bank only approved Plaintiffs' selection of a builder and the Bank never approved any of the multiple requirements for an acceptable Construction Contract such as a final cost of the Project, an itemized budget for each segment of the Project, and an acceptable timetable for completion.  (Counterstatement, No. 103-1, Ex. 4 (reflecting Bank representative's acknowledgment only that "[t]he builder Peter Spagnuolo was approved."))

obligations under contract law, imposing unintended obligations upon parties and destroying the mutual benefits created by legally binding agreements." *Cargill Global Trading v. Applied Develop. Co.*, 706 F. Supp. 2d 563, 580 (D.N.J. 2010) (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assoc.*, 864 A.2d 387 (N.J. 2005)).  "Application of the covenant cannot [ ] alter the terms of a written agreement.  The implied covenant [ ] will fill in gaps, but where the terms of an agreement are specific, it will not override the contract's express language." *Hammer v. Hair Systems, Inc.*, 2009 WL 1686820, at *3 (N.J. Super. Ct. App. Div. Sept. 24, 2010) (citation omitted); *see also Fields v. Thompson Printing Co.*, 363 F.3d 259, 271 (3d Cir. 2004).

Not only did the express terms of the Loan Agreement fail to place any limit on the required "as-completed" appraisal, they expressly permitted the Bank to seek an appraisal "exceeding the Loan Amount" and "in form and substance [ ] satisfactory to Lender."  (Amended CLA, Ex. E, § 7(g)); (CLA, Ex. D, § 3.6.1.)  There is no dispute that the Bank required either an "as-completed" appraisal of $10 million or that Mr. Wu verify assets of $3,873,525.00.  The Bank's requirement stemmed, in part, from the undisputed fact that Mr. Wu proposed a construction plan with an estimated cost of over $4.5 million when the Loan only allocated $3.3 million for construction.  (Statement, No. 96-1, at ¶¶ 24, 41-44, 66-67, 90.)  The excessive construction costs were of critical importance to the Bank because, not only would Mr. Wu be required to pay the excess costs, he would also be required to make ever-increasing payments to the Bank as he drew down the Loan Amount.  (Wu Dep., Ex. A, at 71:19-73:5 (Mr. Wu understood he would be required to make increased payments as construction progressed).)  Because the Bank concluded the "as-completed" appraisal was inadequate given the increased

cost of the Project, it had the right to demand that Mr. Wu verify additional assets.  (Statement, at ¶¶ 33-44.)

As an afterthought, Plaintiffs' assert that the Bank was legally obligated to fund the Construction Phase due to Paragraph 2 of the Rider, which states that "[p]rovided there has been no default as defined in the Loan Documents, Lender is legally obligated to make Advances of principal upon Borrower's application therefore in accordance with the provisions of the Note and Loan Agreement …."  (Opposition, at pp. 5.)  (Rider, Ex. L, at § 2.)  This clause did not obligate the Bank to permit Mr. Wu's Loan to enter the Construction Phase for two reasons.  First, any obligation to fund the Construction Phase is conditioned upon there being "no default."  However, as Defendants have shown, Mr. Wu failed to meet the Acceptance Conditions and Mr. Wu was also in default because he had made false representations on his Loan Application. [4] (Brief, No. 96-2, at pp. 5-9, 14-15.)  Second, while the Rider obligated the Bank to make "Advances," the Loan Agreement specifically stated that the only Advance the Bank was obligated to make prior to the Construction Phase was the Initial Advance of $2,495,418.00. (Amended CLA, Ex. E, §§ 2, 6(c)(i)-(ii) ("Chevy Chase Bank will not be obligated to make any Advances other than the Initial Advance until the Acceptance Date and commencement of the Construction Phase."))  Even during the Construction Phase, the Bank was only obligated to

---

[4]     In his Loan Application, Mr. Wu represented he had $4.5 million worth of personal property and over $27 million worth of assets, yet he never verified those assets when the Bank requested.  (Loan Application, Ex. C, at 2); *see also* (Wu Dep., Ex. A, at 147:3-147:12 (Mr. Wu claims over $4 million in personal assets.))  As Defendants demonstrated, Mr. Wu misrepresented his monthly income in his Loan Application. (Brief, No. 96-2, at 14-15.)    Plaintiffs attempt to refute this falsehood by stating that Defendants' only evidence is Mr. Wu's testimony at his deposition.  (Opposition, at pp. 8.)  However, Defendants have shown that Mr. Wu's Loan Application clearly represents that he had a monthly income of $103,500.00 but that Mr. Wu's tax returns show income well below this monthly amount.  (Brief, No. 96-2, at 14-15.)  Therefore, summary judgment should be granted in Defendants' favor.  (*Id.*)

make Advances for construction "upon delivery to Lender of a Disbursement Request" and if the Borrower had satisfied the other applicable terms of the Loan Agreement.  (CLA, Ex. D, at § 3.8.5.1.)  However, the Loan never entered the Construction Phase and the Bank never received any Disbursement Requests.  Thus, the Rider provision cited by Plaintiffs is inapplicable and does not obligate the Bank in any way to permit Mr. Wu's Loan to enter the Construction Phase.

> **F.**   **Plaintiffs Fail To Show That Mr. Wu Did Not Waive The Right To Enter The Construction Phase.**

Plaintiffs do not dispute that Mr. Wu did not enter the Second Extension Agreement under duress and their entire argument against waiver of the right to enter the Construction Phase through the Second Extension Agreement is premised on two points.  First, Plaintiffs argue that the Second Extension Agreement was not notarized as required.  (Opposition, at pp. 7.)  Second, Plaintiffs argue that Rachel Wu was a borrower under the Loan Agreement and should have signed the Second Extension Agreement.  (*Id.*)  Plaintiffs' arguments have no bearing on the enforceability of the Second Extension Agreement or waiver of the Construction Phase.

First, lack of notarization on the Second Extension Agreement does not allow Mr. Wu to escape its provisions.  As one court has stated:

> The purpose of notarization is to have a neutral third party attest that the parties who sign a document are actually who they say they are.  Certainly, if there is a challenge to the validity of the signatures on the document, improper notarization of the signatures would be an issue.  However, when the validity of the signatures is not an issue, a defect in the notarization does not rebut the [ ] validity of the [ ] instrument.

*In re Bright*, No. 11-46894-MBM, 2013 WL 3270346, at *4 (Bankr. E.D. Mich. June 26, 2013); *see also* N.J.R.E. 902(h) (notarizations are prima facie evidence that a party signed the document).  Thus, numerous courts have held that agreements can be enforceable even without proper notarization.  *See, e.g.*, *Guarantee Co. of N. Am. USA v. Wainwright*, 2:09-CV-1003,

2011 WL 1807454, at *11 n. 11 (M.D. Ala. May 11, 2011); *Davis v. EQT Prod. Co.*, No. 5:12-CV-52, 2012 WL 6111880, at *3 (N.D. W. Va. Dec. 10, 2012); *Pear Street, LLC v. 818 Pear Street, LLC*, No. C-30-07, 2011 WL 9102 (N.J. Super. Ct. App. Div. Jan. 4, 2011).  Because Mr. Wu does not dispute the validity of his signature on the Second Extension Agreement, the failure to have the document notarized is immaterial.

      Second, Plaintiffs' argument that Rachel Wu was a Borrower and should have executed the Second Extension Agreement is irrelevant.[5]  Even if Mrs. Wu could be considered a Borrower, she cannot maintain a breach of contract claim because Plaintiffs have never identified any damages that she allegedly suffered.  All of the damages allegedly suffered pertain to Mr. Wu and his businesses as a result of the Bank's credit reporting.  (Compl., No. 1, ¶ 91 (stating that improper reporting of default and foreclosure on Mr. Wu's credit report caused Plaintiffs' damages)); (Wu Dep., Ex. A, 229:3-231:1 (agreeing damage solely from credit reporting)); (Dean Binder Report, Ex. G2, at pp. 7-12 (describing declines in value of properties and businesses and declinations of credit solely as the result of the Bank's credit reporting).)  Plaintiffs offer no evidence as to any credit reporting concerning Mrs. Wu or any evidence at all demonstrating how she suffered any damages.

---

[5]    Even if Plaintiffs' argument was relevant, Mr. Wu was the only "Borrower" because he alone signed the Note which obligated repayment of the Loan Amount whereas the Second Note Addendum signed by Mrs. Wu did not contain a repayment obligation. (Note, Ex. F); (Second Note Addendum, Ex. H.)

## III.     CONCLUSION

For the foregoing reasons, Defendants Capital One, N.A. and Chevy Chase Bank, F.S.B.,

respectfully request that this Court grant their Motion for Summary Judgment.

Dated: February 24, 2014                          Respectfully submitted,

                                                  /s/ Martin C. Bryce, Jr.
                                                  Martin C. Bryce, Jr. Esq. (NJ 021241990)
                                                  William J. DeSantis, Esq. (NJ 035021985)
                                                  Clifford Sacalis, Esq. (NJ 000772013)
                                                  BALLARD SPAHR LLP
                                                  210 Lake Drive East, Suite 200
                                                  Cherry Hill, NJ 08002-1163

                                                  *Attorneys for Defendants*
                                                  Capital One, N.A. and Chevy Chase Bank,
                                                  F.S.B.

## <u>CERTIFICATE OF SERVICE</u>

I, Clifford Sacalis, hereby certify that a true and correct copy of Defendant's Reply Brief in Support of their Motion for Summary Judgment was served via the United States District Court for the District of New Jersey's CM/ECF system on this date, upon the following:

Mitchell J. Canter
115 Franklin Turnpike
Suite 103
Mahwah, NJ 07430
mcanter@canterlaw.biz

*Attorney for Plaintiffs*
*Lewis Wu and Rachel Wu*

Dated: February 24, 2014                    /s/ Clifford Sacalis_____
                                            Clifford Sacalis, Esq.